Beener, Appellant, *v*. North American Machine Co., Inc.

Argued November 11, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Gene E. McDonald*, with him *Nathaniel A. Barbera*, and *Lightcap, McDonald & Moore*, and *Shaver & Barbera*, for appellant.

*Penrose Hertzler*, for appellees.

OPINION BY WATKINS, J., December 16, 1964:

This is an appeal from the judgment of the Court of Common Pleas of Somerset County entered in a workmen's compensation case in favor of the defendant-appellee, North American Machine Co., Inc., and the intervening defendant-appellee, Old Republic Insurance Company and against Reuben W. Beener, the claimant-appellant.

The claimant was employed by the North American Machine Co., Inc. He was operating a grinding machine when he injured his back on December 5, 1956.

A compensation agreement was executed by the parties and under it the claimant had received compensation for a period of 212 weeks from December 6, 1956 to December 28, 1960, inclusive, with interest, in a total amount of Eight thousand three hundred thirty-five dollars and fifty-eight cents ($8335.58). Several petitions to terminate were filed by the defendants during the period but were denied.

The petition before us on this appeal dated January 13, 1961, is a petition to terminate as of December 28, 1960, not on the ground that disability had ceased, as in prior losing petitions, but in accordance with §306(f) of the Act of June 21, 1939, P. L. 520, 77 PS §531, as amended, the pertinent parts of which read as follows: ". . . If the employe shall refuse reasonable services rendered by duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, tendered to him by his employer, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal."

The petition set forth that the defendants had tendered surgical and hospital services for the fusion of the fourth and fifth lumbar vertebrae and the sacrum and that the claimant had refused to submit to surgery. In the claimant's answer he denied that he had refused the recommended surgery but that he was ready to have it performed by a doctor of his own selection, Dr. John Royal Moore, of Temple University Hospital, Philadelphia, Pa. The referee, after hearing, found the following facts:

"Fourth: That the total disability of the claimant since the date of his accident has been caused by an aggravation of a pre-existing condition, a congenital condition in claimant's spinal column, described as a defect in the pedicle of the fifth lumbar vertebra, causing a slipping of the fifth lumbar on the sacrum, the

aggravation of this condition having been caused by the accident of December 5th, 1956.

"Fifth: That it is the contention of the defendant that an operation in the nature of a spinal fusion between the fourth and fifth lumbar vertebrae and the sacrum would tend to rehabilitate the claimant for useful employment, the operation necessitating further total disability for a period of about six months, if successful, the purpose of which is to stiffen the spinal column at the site of the operation to prevent movement; that the defendant has tendered the claimant such an operation to be performed by Dr. John J. Silenskey, an orthopedic surgeon of Johnstown, but the claimant has refused to accept the operation.

"Sixth: That the operation is a major one, and of course, there is no guarantee that it will be successful, and under all the circumstances your Referee finds that the refusal of the claimant to accept the operation is not unreasonable."

And the referee made the following conclusion of law: "In view of the foregoing facts your Referee concludes as a matter of law that since the claimant's refusal to accept the operation tendered to him by the defendant is not unreasonable, the defendant's petition for termination must be dismissed."

The board affirmed the findings of fact and the conclusion of law of the referee and the court below on appeal reversed the board and entered judgment for the defendants. The question before this Court is whether the refusal to undergo surgery is reasonable. We have held that, ". . . in deciding the question of the reasonableness of the operation, the board should consider the extent of the pain, suffering, inconvenience, etc., entailed by the operation in connection with the benefit that will probably result from it, whether the latter is such as reasonably to justify the former." *Hanyok v. Pa. Coal & Coke Corp.*, 155 Pa. Superior Ct.

194, 199, 38 A. 2d 537 (1944). In *Ream v. Saxman Coal & C. Co.,* 191 Pa. Superior Ct. 408, 156 A. 2d 365 (1959), where a coal miner suffered a fracture of a vertebrae and the defendant filed a petition for termination on the ground that he refused to submit to an operation which, it was contended, would free him from disability symptoms and enable him to return to some form of gainful occupation, and where there was a conflict of medical testimony, we held that there was sufficient competent evidence to sustain the finding of the compensation authorities that the claimant's refusal to submit to the operation was reasonable.

The question then boils down to whether there was sufficient evidence to support the finding of the board that the refusal was reasonable. The court below sustained the defendant's appeal on the ground that the board had capriciously disregarded the evidence that the surgical attention offered would restore the earning power and the capacity of the claimant.

Although the court below points out that under the law the fact finders are not bound to believe the medical testimony, as from their decision, they didn't here, it then goes on to substitute the court's judgment as to credibility.

It is true that the surgeon did testify as follows: "Q. Now, in your opinion, Doctor, would this operation restore his physical condition and restore his earning power? A. That's right. Q. Then do you think he could go back and do his regular work? A. That's right." He also testified: "Q. Would it endanger his life or cause great physical and mental pain? A. Not any more than any other operation." He also testified: "Q. Is there a guarantee that it would improve it, without any hazard? A. There is no guarantee in medicine. Q. So that there is a risk involved in this operation, that the condition could worsen, rather than improve? A. I don't think it would worsen.

There is a hazard that the fusion may not be successful. Q. If the fusion were not successful, Doctor, would you then tell us what the condition of the claimant would then be? A. If the fusion were not successful the condition of the claimant would be the same as it is now. Q. In other words, the pain would continue? A. Yes." He also testified that there would be further pain and disability during a course of recovery estimated at six months and further that claimant would have to wear a cast until the fusion would be solid, if successful, and the cast would be on the claimant for two or three months.

Dr. Frank A. Pantalone, an impartial medical examiner, after an examination of this claimant stated: "I do believe that there is a possibility that with surgery, along with an extensive course of rehabilitation, of physio-therapy, muscle training, and the like, that this patient might be able to return to some type of gainful occupation." When this was called to the attention of Dr. Silenskey, his answer was: "That is Dr. Pantalone's opinion. What I have stated here is my opinion and I will stick to it."

The credibility of medical witnesses and the weight to be attached to their testimony are matters exclusively for the board. The board is not even required to accept as true uncontradicted testimony. *Moore v. MacArthur Pile Corp.*, 193 Pa. Superior Ct. 512, 165 A. 2d 275 (1960).

Consent to surgery is always a tremendous decision to the average person. There is a natural fear of the surgeon's knife and we can take judicial notice of the fact that there is a percentage of failure existing in surgical operations and especially in spinal operations. As Dr. Silenskey said, "There is no guarantee in medicine." Dr. Silenskey was of the opinion that the operation, if successful, would restore the claimant's physical condition and earning power. In fact, he tes-

512

tified that he would be able to do his former work of lifting bars of 75 to 80 pounds, and described the risk of the operation as minimal. Dr. Pantalone was not so positive. He described the extensive course of rehabilitation that would be necessary after such an operation and that then the patient might be able to return to some type of gainful occupation.

The claimant was born May 9, 1918, so that his back was injured when he was over 38 years of age. He has lived with this back injury ever since that time and has been held to be permanently disabled despite a number of unsuccessful petitions to terminate. At the time of the offer of the operation he was 42 years of age and had been unable to do any work for four years. Under such circumstances we can well understand the dubious view taken by the fact finders of the optimistic testimony of Dr. Silenskey as to the result of the spinal graft.

In view of the major surgery involved, the extent of pain, suffering, inconvenience, and the long and painful period of recovery entailed by the operation and the serious hazard that exists in the possibility of restoration of his physical condition and his earning power, for all of which there was sufficient competent evidence, the fact finders were justified in determining that the refusal was reasonable.

The judgment is reversed and the decision of the Workmen's Compensation Board is reinstated.