Bostic *v.* Dreher et al., Appellants.

Argued June 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Paul J. Senesky,* with him *Joseph J. Murphy,* and *Murphy & Senesky,* for appellants.

*Carl M. Mazzocone,* with him *Sheer & Mazzocone,* for appellee.

OPINION BY WRIGHT, J., September 16, 1965:

This is a workmen's compensation case. The insurance carrier has appealed from an order of the court of common pleas sustaining the refusal of the compensation authorities to terminate compensation. The primary question involved is whether the claimant was

justified in refusing to submit to a second myelogram.[1]

Alvin L. Bostic, the claimant, was employed by George Dreher as a laborer. On July 10, 1962, while loading a conveyor, claimant was struck by a stone and injured his lower back. An open agreement was executed calling for payment of compensation for total disability. On October 14, 1963, the insurance carrier filed a petition for termination alleging that claimant's disability had ceased, to which petition claimant filed an answer. After taking testimony, the Referee found that claimant was still totally disabled, and that claimant was "reasonably apprehensive" about submitting to a second myelogram. The termination petition was therefore dismissed and compensation payments were continued. The Board affirmed the Referee. As previously indicated, the court of common pleas affirmed the Board, and the insurance carrier has appealed.

The record discloses that the original myelogram by Dr. Frederick Goeringer, Chief Orthopedic Specialist at the Misericordia Hospital, revealed a small defect at the interspace between L-5 and S-1. According to claimant's testimony, he was willing to submit to a laminectomy and Dr. Goeringer wanted to perform that operation. However, the insurance carrier objected and demanded that claimant submit to a second myelogram. Its witness was Dr. Leonard Klinghoffer, a staff specialist in orthopedic surgery at Graduate Hospital, University of Pennsylvania, who first examined claimant on November 6, 1962. He was of the opinion that claimant "probably had a herniated disc". He attempted to treat claimant by pelvic traction, but this did not improve the condition. Dr. Robert Andrew, neurosurgeon, was then called into con-

---

[1] A myelogram is a diagnostic procedure which involves the injection of an opaque solution into the spinal canal. The patient's torso is then tilted so that the dye may infiltrate the intervertebral disc spaces. X-rays are taken to reveal abnormalities.

sultation. With regard to the first myelogram, Dr. Klinghoffer testified as follows: "Dr. Andrew wasn't impressed with it too much and he thought he would like to see another myelogram. If this questionable finding was seen again, then it would have significance. On the basis of this alone he didn't think he would want to make a diagnosis of a herniated disc".

Section 314 of The Pennsylvania Workmen's Compensation Act[2] requires an injured employe to submit himself for physical examination, and provides that refusal or neglect to do so, without reasonable cause or excuse, shall deprive him of the right to compensation.

---

[2] "At any time after an injury the employe, if so requested by his employer, must submit himself for examination, at some reasonable time and place, to a physician or physicians legally authorized to practice under the laws of such place, who shall be selected and paid by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination by the physician or physicians selected by the employer, the board may, upon petition of the employer, order the employe to submit to an examination at a time and place set by it, and by the physician or physicians selected and paid by the employer, or by a physician or physicians designated by it and paid by the employer. The board may at any time after such first examination, upon petition of the employer, order the employe to submit himself to such further examinations as it shall deem reasonable and necessary, at such times and places and by such physicians as it may designate; and in such case, the employer shall pay the fees and expenses of the examining physician or physicians and the reasonable traveling expenses and loss of wages incurred by the employe in order to submit himself to such examination. The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination ordered by the board, either before or after an agreement or award, shall deprive him of the right to compensation, under this article, during the continuance of such refusal or neglect. and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.

"The employe shall be entitled to have a physician or physicians of his own selection, to be paid by him, participate in any examination requested by his employer or ordered by the board" Act of June 2, 1915, P. L. 736, Section 314, as amended, 77 P.S. 651.

Under this section, an order requiring further physical examination is a matter for the sound discretion of the compensation authorities, and nothing less than a manifest abuse of that discretion will justify the interference of the court: *Roach v. Oswald Lever Co.*, 274 Pa. 139, 117 A. 785. Cf. *Gabersek v. Hillman C. & C. Co.*, 107 Pa. Superior Ct. 1, 162 A. 503; *Rennard v. Rouseville Cooperage Co.*, 141 Pa. Superior Ct. 286, 15 A. 2d 48.

Section 306(f) of the statute (77 P.S. 531) contains similar language, as follows: "If the employe shall refuse reasonable services rendered by duly licensed practitioners of the healing arts, surgical, medical and hospital services, treatment, medicines and supplies, tendered to him by his employer, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such refusal". In *Karasavage v. Phila. & R. C. & I. Co.*, 76 Pa. Superior Ct. 83, the claimant gave as his reason for refusing an eye operation the fact that he knew of a case in which a similar operation had been unsuccessful and had caused complete loss of vision. It was held that the question whether or not claimant's refusal was justified was one of fact for the compensation authorities. In determining the question of the reasonableness of the refusal there must be considered the extent of the pain, suffering, and inconvenience entailed by the operation in connection with the benefit which will probably result from it, whether the latter is such as reasonably to justify the former: *Hanyok v. Pa. Coal & Coke Corp.*, 155 Pa. Superior Ct. 194, 38 A. 2d 537. See also *Ream v. Saxman Coal & Coke Co.*, 191 Pa. Superior Ct. 408, 156 A. 2d 365; *Beener v. North American Machine Co.*, 204 Pa. Superior Ct. 506, 205 A. 2d 665.

In the case at bar, claimant's refusal to submit to a second myelogram was based upon his reaction to

the first one, which assertedly resulted in the development of phlebitis. "Well, my leg swelled up and the veins jumped out as big as my fingers. I hemorrhaged through the nose and mouth. I got chills and fever. A friend of mine had to rush me to the hospital. I couldn't walk". Claimant takes the position that a ruptured disc may be diagnosed and repaired without the performance of a myelogram, and that its indiscriminate use as a diagnostic technique can lead to serious and harmful side effects.[3] Howbeit, we all agree with the court below that there was no abuse of discretion on the part of the compensation authorities in determining that claimant's refusal to submit to a second myelogram was not without reasonable cause or excuse.

. Appellant has advanced a second contention which is mentioned only to indicate that it has not been overlooked. We find no merit in the argument that Dr. Klinghoffer's testimony "makes out a prima facie change of disability". Appellant concedes that it had the burden of proof. See *Knight v. Millard,* 350 Pa. 17, 38 A. 2d 264; *Lackman v. F. W. Woolworth Co.,* 205 Pa. Superior Ct. 129, 208 A. 2d 33. The credibility and weight of the testimony was for the Board, and the record discloses no capricious disregard of competent evidence. Cf. *Verna v. Stabler,* 204 Pa. Superior Ct. 87, 203 A. 2d 578.

---

[3] The following authorities are cited in claimant's brief before the lower court: "An Evaluation of Myelography in the Diagnosis of Intervertebral Disc Lesions of the Low Back" by Dr. J. Albert Key and Dr. Lee T. Ford, Journal of Bone and Joint Surgery, Volume 32A at page 306; "Court Room Medicine" by Marshall Houts at page 91; "Lesions of the Lumbar Intervertebral Disc" by Dr. R. Glen Spurling, at page 73. It is asserted that "the Mayo Clinic, in a recent study, rated the effectiveness of myelography at 72.7% and categorically condemned the indiscriminate use of myelography as a diagnostic technique".

The appeal is dismissed, and the record is remitted to the court below for the entry of a judgment in favor of the claimant. As so entered, the judgment is affirmed. See *Miller v. Pittsburgh Coal Co.,* 77 Pa. Superior Ct. 51.