Dissenting Opinion by
Hoffman, J.:
This case arises out of a claim for benefits filed under The Pennsylvania Occupational Disease Act for disability resulting from lead poisoning.
Hearings in this matter were first held on July 14 and September 8, 1965 before the referee who denied the claim. At that hearing, Dr. George Ehrlich testified on behalf of claimant and a Dr. Brieger testified on behalf of the company.
The referee accepted the testimony of Dr. Brieger and dismissed the claim. On appeal, the Workmen’s Compensation Board held that the referee erred in accepting the testimony of Dr. Brieger who had never examined claimant. Nonetheless, the Board affirmed the dismissal on the grounds that the testimony of Dr. Ehrlich was somewhat equivocal. The Board also mentions as secondary reasons that (a) the hospital records at the time of claimant’s discharge made no mention of lead poisoning; (b) Dr. Ehrlich was not claimant’s treating physician; and (c) Dr. Ehrlich never examined claimant for blood poisoning.
‘ The lower court, in affirming the Board, held that' its findings were consistent and could be sustained without a capricious disregard of the competent evidence.
*292 It is, of course, well-established that the credibility of medical witnesses is for the Board; nor is the Board required to accept the testimony of a medical witness, though uncontradicted. Beener v. North American Machine Co., Inc., 204 Pa. Superior Ct. 506, 205 A. 2d 665 (1964).
The Board here, however, did not reject claimant’s medical testimony because it found the doctor’s statements to lack credibility. Bather, it dismissed the claim on the narrow ground that the testimony, as phrased, did not rise to the level of competent expert opinion evidence. As the Board stated “In several instances when testifying as to important facts upon which he based his opinion that claimant was totally disabled from the gout condition which resulted from lead poisoning, he employed the word ‘probably.’ ”
The Board, in my opinion, has seized on the occasional use of the word “probably,” although a reading of the whole record reflects that Dr. Ehrlich set forth his opinion, clearly and unequivocally, on several occasions. At p. 23 he stated: “I think there is little question that the kidney disease and also that of his nerves, peripheral disease, is because of lead, chronic lead poisoning, and it is substantiated on medical tests. . .” At p. 29 he reiterated: “I testified that the lead poisoning was in my opinion responsible for his kidney disease and peripheral nerve lesions and it was probably responsible for his gouty arthritis.”
In short, it is clear that Dr. Ehrlich did testify that claimant’s disability arose out of the lead poisoning.
The various references in the testimony where Dr. Ehrlich stated that the aspects of the disability were “probably” caused by lead poisoning, do not affect the above clear, unequivocal testimony. Indeed, in my opinion, the occasional use of the word “probably” should not vitiate his testimony. Where the medical *293 opinion is otherwise clear and definite, there is no need to look to inadvertent phrases made by the expert witness, who is a layman, to upset the weight of the testimony.
It is, of course, true that the Board was not required to accept Dr. Ehrlich’s testimony and might simply have stated that it disbelieved him. Had-it done so, I might agree that we are bound by its findings. Here, however, the Board did not say that it disbelieved him but only that his testimony did not meet the required legal standards of certainty. In this, I believe the Board erred. The testimony of the Doctor, as set forth above, was sufficiently definite.
Only brief mention need be made of the final points. The Board’s statement that Dr. Ehrlich was not the treating physician is irrelevant. All that is required is first-hand knowledge of the patient. Dr. Ehrlich testified specifically that he examined claimant periodically with his staff.
Similarly the fact that the medical record of the hospital discharge made no mention of lead poisoning would be irrelevant. First, Dr. Ehrlich specifically mentioned that he thought the diagnosis incomplete. Moreover, lead poisoning, as testified, is curable, although the effect created by it may not be.
I would similarly reject the Board’s decision to ignore Dr. Ehrlich’s testimony because he was not a specialist in toxicology. Dr. Ehrlich, a Department Head at Albert Einstein Medical Center, one of Philadelphia’s leading hospital and teaching institutions, is a certified specialist in internal medicine, and is certainly familiar with the ailments causing the disability — kidney lesions, peripheral nerve disease and frequent attacks of gout. Moreover, Dr. Ehrlich testified as to the results of tests. Significantly, while the claimant establishes that this testimony was consistent *294 with expert literature in the field, the Board does not contend that the testimony was incompetent in such regard.
In summary, the Board rejected Dr. Ehrlich’s testimony, not because it disbelieved him but because, occasionally, he used the word “probably.” A careful reading of the whole testimony reveals, however, that Dr. Ehrlich’s testimony was clear and unequivocal. The Board’s secondary claim that Dr. Ehrlich did not examine claimant is not supported by the record. Finally, the fact that Dr. Ehrlich was not a specialist in’ toxicology in no way derogates from the fact that he was familiar with the medical problems, had studied the appropriate tests and had reached conclusions consistent with the medical literature in the field.
For these reasons, I would vacate the order of the lower court and remand this case to the Board for further findings.